# EXHIBIT A

29977444

FILED

17 SEP 27 PM 4.23

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-25458-4 SEA

**STATE OF WASHINGTON
KING COUNTY SUPERIOR COURT**

| | |
|---|---|
| MATT TIGHE,<br><br>             Plaintiff,<br><br>v.<br><br>KING COUNTY, SCOTT GARNETT<br>AND SARAH GERLITZ<br>             Defendants. | NO.<br><br>COMPLAINT FOR DAMAGES |

COMES NOW the Plaintiff, MATT TIGHE, by and through his attorney of record, Noah Davis of In Pacta PLLC, to complain and allege as follows:

**I.  PARTIES**

1.     Plaintiff TIGHE is an individual, a resident of the State of Washington, King County, and former employee of the Defendant KING COUNTY, in the King County Sheriff's Office (KCSO).

2.     Defendant KING COUNTY is a Washington governmental entity, and includes the King County Sheriff's Office.  All references to KING COUNTY include references to the KCSO and vice-versa.

COMPLAINT FOR DAMAGES - 1

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

3.     Defendant Scott GARNETT was/is a sergeant with the KCSO and was involved in violating Plaintiff's civil rights.

4.     Defendant Sarah GERLITZ was/is a detective with the KCSO and was involved in violating Plaintiff's civil rights.

## II.     JURISDICTION AND VENUE

5.     This suit involves the commission of tortious acts by the Defendant against its employee (Plaintiff), by and through the Defendant's employees and agents, and occurring within King County, State of Washington with damages well exceeding $100,000.

6.     Plaintiff brings this action for violation of federal and state law claims.

7.     Thus, personal and subject matter jurisdiction is proper in the King County Superior Court.

## III. SUMMARY OF FACTS

8.     Plaintiff TIGHE was a relatively long-time employee of the KCSO as a Sheriff's deputy, beginning in September 2002 until he took leave for military service in the summer of 2010.

9.     After serving on active duty military, Plaintiff TIGHE sought to return to his employment at the KCSO in 2014.

10.    However, to re-employ with the KCSO, the Plaintiff was required to complete additional screening prior to his return.  This included: a polygraph, more than 3 hours of psychological testing, full physical exam, drug testing, pass/fail written exams at the police academy intended for out of state peace officers wishing to pursue careers in law enforcement

COMPLAINT FOR DAMAGES - 2

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

in Washington State granting them a state "peace officers" certification, field training and full background check.

11.     Prior to his return and while still on active duty, the Plaintiff sought outside counsel to contact the KCSO and help him with his return to work from military deployment without all of the additional requirements and re-screening; and despite this help, the KCSO still refused to change its posture towards Plaintiff.

12.     In order to try and return to his previous position with the KCSO, Plaintiff TIGHE was subjected to a month of special requirements imposed on him by KCSO (as if he was an entry level hire) before TIGHE could be reinstated to the same position that he had before he left: a rescue diver in the Marine Unit.

13.     After returning to the KCSO and the Marine Unit, Deputy TIGHE applied for and was accepted to the Metro Transit Police Department.

14.     After working Metro Transit Police at the KCSO for several months, Deputy TIGHE was notified that the military was again activating him for service duty for an additional six (6) months.

15.     Prior to his departure for military service, and contrary to the protections that Deputy TIGHE believed he had under federal and/or state law, KCSO told Deputy TIGHE that since he was leaving for more than 90 days, he would not return to his specialty unit and he would be re-assigned to an entry level position when he returned.

16.     When TIGHE notified the KCSO of his impending return (and then returned), KCSO followed through on its promise by not returning TIGHE to his position with KC Metro and instead assigning him to a rookie patrol.

COMPLAINT FOR DAMAGES - 3

29977444

17.     While the pay was the same, the position was clearly not, and left Plaintiff with having to re-start his career at an entry level position (thereby delaying promotions and advancement, delaying increased responsibility and ostracizing Plaintiff).

18.     Plaintiff was akin to a rookie officer again with little to no say, authority or responsibility within the department.

19.     At this time of demotion he'd been with the department for 12 years and in law enforcement for a total of 15 years.

20.     While this violated USERRA, it was also retaliation for TIGHE having questioned all of the "re-hire" testing he had to go through on the first return from active duty.

21.     So when TIGHE was re-hired by KSCO after the second active duty deployment, but was not placed into the same position that he had left, he was understandably disappointed and made remarks to other officers.

22.     TIGHE also knew that another deputy had left for military service for approximately the same time that Deputy TIGHE had and yet was given his same position back after his service. Thus Deputy TIGHE was being treated differently for some reason.

23.     Unbeknownst to Plaintiff TIGHE, it was known by many at the KCSO that KSCO senior staff and Sheriff Urquhart would not tolerate any form of questioning or resistance to (what some, or even many officers have called) the Sheriff's totalitarian regime within the department.

24.     And thus, the KSCO was not going to sit by and let Plaintiff TIGHE "ruffle feathers" or contest the authority of the Sheriff.

COMPLAINT FOR DAMAGES - 4

25.     Thus, Deputy TIGHE unknowingly confronted the KCSO and Sheriff Urquhart by seeking outside counsel to assist with his return to work from deployment and then by questioning his placement in a rookie level position upon his second return from active duty.

26.     Sheriff Urquhart treats dissension to his orders (and his immediate subordinate's orders) as insubordination and has in the past sought retribution against the dissenting officers.

27.     This is not the first time that Sheriff Urquhart or the KCSO has sought to and in fact retaliated against officers of the KCSO – but these were the first instances of retaliation against Deputy TIGHE.

28.     Thus, when the KCSO had another chance to retaliate against Deputy TIGHE, it made sure it would not be missed.

29.     This chance came in the form of a neighbor's complaint against TIGHE – which was, in essence, a civil complaint, between neighbors over a nuisance dog and at most a civil disobedience, misdemeanor type infraction.

30.     TIGHE's neighbor provided what appeared to be a harassing email and suggested that Plaintiff had sent the email to her (regarding her dog).

31.     Plaintiff had not sent the email.

32.     Instead of treating a neighbor dispute over a dog with the level of attention that would normally be called for (i.e. a courtesy visit by the police, or a domestic dispute type visit by the police, or else, the issuance of a subpoena to appear for questioning, or even the issuance of summons for an alleged misdemeanor infraction), the KCSO ratcheted this comparatively non-emergent situation to one akin to a felony investigation requiring a high level, immediate

COMPLAINT FOR DAMAGES - 5

emergency response that would shift the priorities of the department and its resources from serious felony investigations to the investigation of an officer over a neighbor's dog.

33. And yet, in those cases where the KCSO undertook what it deemed to be serious investigations of its own deputies, the protocol was to have "major crimes" investigate, or else have an outside police agency investigate.

34. Instead of any of that, the KCSO treated this matter as a high level, top priority, probable cause investigation of commission of a felony and put new detective (GERLITZ) in charge of the investigation.

33. And despite the lack of probable cause and despite the lack of exigent circumstances, the KCSO internal affairs unit wrote their own search warrants to invade Plaintiff and his family's home to hold the TIGHE family under house arrest as if a very serious felony had been committed or was about to occur.

34.     And so, on August 4th, 2016 a total of six (6) Detectives swooped in on Plaintiff's home and detained his wife in the presence of his children to search the house and seize computers and cell phones – all based upon an on-line complaint (and follow-up call) from a neighbor incorrectly suggesting that Deputy TIGHE was behind a purportedly threatening email about a dog.

35.     Although the scene was akin to a felony drug bust or arrest of dangerous fugitive, the TIGHE family can at least be thankful that the KCSO didn't order SWAT this time.

36.     Had this happened to a member of city council, the mayor, a state representative, a judge, or even a general, law abiding member of the community, there would be incredible (and understandable) uproar.

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

29977444

37.     Instead, there was only silence because TIGHE was a KSCO Sheriff's Deputy and the KCSO made sure that the "investigation", the home-invasion, the related subpoenas and the outcome were kept under wraps.

38.     During this supposed high level "swoop" and "sting" operation using the Department's valuable time and resources, Deputy TIGHE was detained, read Miranda and questioned by the KCSO for a total time of in-custody of approximately four hours, without the freedom to leave or make a phone call.

39.     Deputy TIGHE was told he would remain in the custody of a senior supervisor until the search warrant and interview of his wife in his own home was over.

40.     TIGHE was under arrest.

41.     TIGHE was then placed on administrative leave, which because of the devastating personal effect that this had on him, it effectively ended his career as a police officer on August 4, 2016.

42.     Soon the KCSO learned that Deputy TIGHE had in fact NOT sent the allegedly threatening email to the neighbor.

43.     Instead, it turns out that without TIGHE's involvement or knowledge, TIGHE's wife had allegedly sent the email.

44.     Still, no formal charges were made against Deputy TIGHE'S wife.

45.     And so, despite treating the email about a dog as if a very serious felony had occurred (and despite not using an outside police agency or even its own major crimes detectives), because the KCSO and Sheriff Urquhart didn't have the person they wanted (TIGHE) no charges were made against the Wife.

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

46.     Thus, despite all of these resources of the Sheriff's department being used and despite all of these allegedly exigent circumstances that needed this high level police authorized home invasion, no action was taken against the Wife, UNTIL, almost exactly ONE YEAR LATER, when, and only when, another senior KCSO supervisor who witnessed the event challenged the conduct of the KSCO through an internal investigation (and TIGHE joined as a complainant).

47.     And, once again, because Plaintiff confronted the authority of the Sheriff and KCSO, he was retaliated against, this time with KCSO forwarding charges against his wife to the KCPO for misdemeanor prosecution.

48.     And, despite that the internal investigation supported Plaintiff's complaint that there was a lack of probable cause and abuse of process, Sheriff Urquhart and/or his direct subordinates at KSCO made (or were directed to make) a finding of "unfounded" or "un-sustained' (as to Plaintiff's internal complaint).

49.     As a result of the above retaliatory conduct by the KCSO, the breach of trust by his superiors and being treated as a common criminal without any ability to protect his family from unreasonable searches and actions of the KCSO (which were directed at Plaintiff's family in retaliation of his lawful assertion of his rights), Plaintiff was devastated.

50.     As a result of being arrested and his family subjected to home invasion and arrest, Plaintiff could no longer work at the KCSO, he no longer trusted the department or other officers, felt embarrassed, ashamed, helpless and lost.

51.     TIGHE was found by independent medical personnel to be "unfit for duty" as a result of the KSCO's actions and placed on FML.

COMPLAINT FOR DAMAGES - 8

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

52.     KCSO ruined TIGHE's reputation and his strong and promising career.

53.     Due to the unreasonable and retaliatory conduct of the Sheriff and the KCSO, Plaintiff has lost the opportunity to advance in the Sheriff's Office and as a police officer anywhere, lost future income and future pension rights, his stellar reputation has been damaged and he has suffered great mental anguish and loss of enjoyment of life.

## IV. CAUSES OF ACTION

54.   Plaintiff re-alleges and incorporates by reference, into each Cause of Action, the above facts and allegation as if set forth below as part of each claim.

**A.   COUNT I: Discrimination and Failure to Re-Employ after Return from Active Duty Military (Federal Law) - USERRA**

55.   Plaintiff TIGHE was entitled to certain rights and protection as an employee returning to the same employment after serving active duty in the military.

56.   The Uniform Services Employment and Reemployment Rights Act of 1994 (USERRA) guarantees returning veterans reemployment with their former employers and prohibits employers from discriminating against veterans based on their military service.  38 U.S.C. §§ 4301–4335

57.   The reemployment and discrimination provisions protect different phases of employment.

58.   Because Plaintiff was on active duty military service/leave for under five (5) years, 38 USC §4312 required the Defendant King County to re-employ Plaintiff without additional hurdles so long as a) Plaintiff gave notice of an impending return (he did); b) Plaintiff send them a DD 214 (he did), and c) Plaintiff be honorably discharged (he was).

COMPLAINT FOR DAMAGES - 9

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

29977444

59.  If a veteran satisfies these four prerequisites, then the reemployment provisions prohibit an employer from limiting or delaying his reemployment rights *in any way*.  38 U.S.C. §§ 4312, 4313.

60.      At the point of rehire, §§ 4312 and 4313 entitle a returning veteran to reemployment in either the position he would have held absent his departure for military service "or a position of like seniority, status and pay."  38 U.S.C. § 4313(a)(2)(A).

61.      USERRA prohibits employers from placing "additional prerequisites" on returning veterans seeking to exercise their reemployment rights. See 38 U.S.C. § 4302.

62.      Requiring Plaintiff to undergo psychological testing, drug testing, background checks, attend a pass/fail post academy and conduct field training all before he was re-hired delayed Plaintiff's reemployment and violated USERRA.

63.      Re-screening employees before reemploying them constitutes "additional prerequisite" that is not permissible under USERRA.

64.      At the point at which Plaintiff was entitled to reemployment under §§ 4312 and 4313 (set forth above), the KCSO had no basis on which to question his qualifications.  TIGHE had satisfied the only prerequisites to § 4313—those specified in § 4312—and KCSO's attempt to impose additional prerequisites through its return-to-work process was wholly impermissible.

65.      And placing Plaintiff in a rookie/beginning shift both limited his re-employment and discriminated against him for his military service by treating him less favorable because of his military service.

66.      For returning veterans who were deployed for over 90 days, reemployment is to "the position of employment in which the person would have been employed if the continuous

COMPLAINT FOR DAMAGES - 10

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

employment of such person with the employer had not been interrupted by such service, or a position of like seniority, **status** and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A).

67.     Regulations promulgated under USERRA note that as a general rule, "the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service." 20 C.F.R. § 1002.191. This position is referred to as the "escalator position." *Id.*

68.     Here, and despite the same pay, Plaintiff was actually demoted to a far less favorable position/shift.

69.     USERRA provides for liquidated damages in an amount equal to lost wages and benefits "if the court determines that the employer's failure to comply with the provisions of this chapter was willful." 38 U.S.C. § 4323(d)(1)(C).  An employer's conduct was "willful" when "'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited' by the law at issue." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 403 (6th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).

**B.    COUNT II: Discrimination Against Military Status (State Law)**

70.     The WLAD declares as a civil right, the right to be free from discrimination because of …military status.

71.     After returning to work with the KSCO (after being away as active duty military), Plaintiff was stripped of his position and seniority and forced to work an entry level shift.

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

72.     Plaintiff was discriminated against simply because he had gone on active duty to service his country then tried to return to his former position with the KSCO.

73.     And, Plaintiff was discriminated against for attempting to enforce his rights due to his military status (under USERRA).

74.     Plaintiff suffered embarrassment and self-doubt and emotional pain and suffering as result of the additional requirements imposed upon him (and the role demotion) all because of his military status.

**C.  COUNT III:  Violation of RCW Chapter 49.60, and specifically RCW 49.60.210 "Unfair practices — Discrimination against person opposing unfair practice — Retaliation against whistleblower" – State Law**

75.  The Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, extends broad protection from retaliation to any person who has reported discriminatory conduct, as defined by the statute.

76.  It is an unfair practice for any employer to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden by this chapter, or because he has filed a charge, testified, or assisted in any proceeding under this chapter.

77.  After Plaintiff reported the unfair practices and attempted to assist in an investigation into why he was not restored to his former position and why he had to undergo additional testing and training, he was subject to retaliation from the KSCO.

78.  The retaliation first came in the form of the demotion in role with KSCO.

79.  Then the retaliation came in the form a home invasion by the KSCO under the guise of a probable cause search warrant for an allegedly threatening email to a neighbor over a dog.

COMPLAINT FOR DAMAGES - 12

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

29977444

80.  This retaliation included Plaintiff and his family being unlawfully detained (and arrested), Plaintiff's personal private property seized, and his home searched.

81.  Plaintiff and his family were treated in this manner because Plaintiff was an employee of the KSCO and the Defendant County wished to retaliate against him and abuse its police power, process and authority to show him that he'd better not mess with the Sheriff.

82.  This retaliatory action came only because (or chiefly because) Plaintiff had opposed the practices of the KSCO to treat him unfairly because of his military status (which he knew that they could not do).

83.  Then, when Plaintiff sought an internal investigation of the KCSO's improper actions (by way of internal complaint against the KSCO), he was again subject to retaliation by the KSCO choosing then to forward criminal charges against his wife to the KC prosecutor.

84.  The fact that Plaintiff opposed unlawful practices was a substantial factor in (and causal link to) Defendant's actions (in the form or retaliation) against Plaintiff in violation of RCW 49.60.210 and chapter 49.60 and RCW 49.78

85.  Had Plaintiff not opposed these unlawful practices, he would not have been retaliated against.

86.  And because of this retaliation, Plaintiff became unfit and forced to resign for medical reasons.

87.  Constructive discharge occurs when, "looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' " *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987) (alteration in the original).  "In such cases, the

COMPLAINT FOR DAMAGES - 13

IN PACTA PLLC
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

individual has simply had enough; she can't take it anymore." *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir.1998)

88.  As a result of the retaliation, Plaintiff is entitled to recover general damages, specific damages, as well as his costs and reasonable attorney fees.

**D. COUNT IV: Violation of Civil Rights (State Law)**

89.  Plaintiff had a right to be free from unreasonable searches and seizures and had a reasonable expectation of privacy.

90.  The Defendants KCSO, GARNETT and GERLITZ, acting under the color of law, caused the property of the Plaintiff to be searched and seized, or did actually engaged in the search and seizure of the property of Plaintiff TIGHE on or about August 4, 2016.

91.  And, the Defendants abused process by failing to disclose all facts to the tribunal including the lack of any exigency when seeking to obtain a warrant based on an alleged probable cause, and in fact, that there lacked probable cause and that the warrant was sought at the direction of the Sheriff and his subordinates as a result of malice against Plaintiff.

92.  And, the Defendants KCSO, GARNETT and GERLITZ, acting under the color of law, unreasonably and unnecessarily detained Plaintiff TIGHE, depriving him of due process and his freedom.

93.  The search and seizure (of property and person) was unnecessary and unreasonable.

94.  The Defendants proximately caused injury to Plaintiff in embarrassment, and emotional damage and caused such suffering to make him unfit for duty and to end his career as a police officer.

COMPLAINT FOR DAMAGES - 14

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178

29977444

**E. COUNT V: Violation of Civil Rights §1983 (Federal Law)**

95.  Plaintiff had a right to be free from unreasonable searches and seizures and had a reasonable expectation of privacy.

96.  The Defendants KCSO, GARNETT and GERLITZ, acting under the color of law, caused the property of the Plaintiff to be searched and seized, or did actually engaged in the search and seizure of the property of Plaintiff TIGHE on or about August 4, 2016.

97.  And, the Defendants abused process by failing to disclose all facts to the tribunal including the lack of any exigency when seeking to obtain a warrant based on an alleged probable cause, and in fact, that there lacked probable cause and that the warrant was sought at the direction of the Sheriff and his subordinates as a result of malice against Plaintiff.

98.  And, the Defendants KCSO, GARNETT and GERLITZ, acting under the color of law, unreasonably and unnecessarily detained Plaintiff TIGHE, depriving him of due process and his freedom.

99.  The search and seizure (of property and person) was unnecessary and unreasonable.

100. These actions are in violation of 42 US Code §1983.

101. The Defendants proximately caused injury to Plaintiff in embarrassment, and emotional damage and caused such suffering to make him unfit for duty and to end his career as a police officer.

COMPLAINT FOR DAMAGES - 15

## V. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS that judgment be entered against Defendant as follows:

I. For general damages in an amount to be proven at trial, including mental anguish and loss of enjoyment of life;

II. Damages for lost wages in amounts to be proven at trial;

III. Exemplary damages in amounts equal to double the wages due to Plaintiff, pursuant to RCW 49.52.070;

IV. Attorneys' fees and costs pursuant to RCW 49.46.090 and RCW 49.48.030 and federal law for each claim giving rise to attorney's fees for Plaintiff.

V. For medical expenses reasonably incurred to date, and to be incurred in the future in an amount to be proven at trial;

VI. Prejudgment interest; and

VII. For such other and further relief as may be proven or that the court may deem just and equitable.

DATED this 27th day of September 2017.

IN PACTA PLLC

*Noah C Davis*

By _____

Noah Davis, WSBA # 30939
(FOR PLAINTIFF)

COMPLAINT FOR DAMAGES - 16

29977444

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DAMAGES - 17

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave., Suite 800
SEATTLE WA 98104
PH 206.709.8281  FX 206.860.0178