UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATT TIGHE,<br><br>      Plaintiff,<br><br>  v.<br><br>KING COUNTY, SCOTT GARNETT,<br>SARAH GERLITZ,<br><br>      Defendants. | CASE NO. 2:17-cv-01875-BAT<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>PROTECTIVE ORDER** |

On November 1, 2018, King County ("County"), Scott Garnett, and Sarah Gerlitz ("Defendants") moved for an order narrowing the scope of Plaintiff Matt Tighe's October 25, 2018 Notice of 30(b)(6) Deposition. Dkt. 33 (motion noted November 9, 2018). At that time, the parties were unable to resolve their dispute as to various topics (Topic Nos. 1, 4, 5, 6, and 8). *Id.*, pp. 4-5. On November 8, 2018, Defendants produced three designees to testify regarding Topic Nos. 1, 4, 5, and 6, and Plaintiff was satisfied with the examination. Defendants did not produce a designee to testify regarding Topic No. 8. Dkt. 39, Second Declaration of Donna Bond, at ¶ 3, Ex. A.

The parties agree that Topic No. 8 is the only disputed issue remaining for the Court's consideration.

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 1

## BACKGROUND

Plaintiff alleges violations of the Uniformed Services Employment Reemployment Rights Act (USERRA), the Washington Law Against Discrimination (WLAD), and other civil rights violations. Dkt. 1-2. Plaintiff alleges Defendants retaliated after he questioned his "re-hire" testing when he returned to his employment at the King County Sheriff's Office (KCSO) after serving on active duty military. This retaliation allegedly occurred in how the KCSO handled a neighbor's complaint against him about a harassing email about her dog. As a result, KCSO search his home, seized computers and cell phones, and placed Plaintiff under arrest and on administrative leave. Plaintiff was ultimately exonerated of wrongdoing because it was his wife, Katherine Tighe, who sent the email without his knowledge. *Id.*, pp. 4-9.

Katherine Tighe created a Google email account under a fictitious name and used it to send an email to a neighbor with whom the Tighes had an ongoing dispute. Dkt. 35, First Declaration of Donna Bond, p. 1 at ¶ 4; Exhibit 1. After the neighbor made an online complaint, Defendant Scott Garnett determined the email fit the criteria for cyberstalking, a gross misdemeanor under RCW 9.61.260. KCSO initiated a criminal investigation and an administrative internal investigation. Sergeant Garnett assigned the criminal investigation to Defendant Sarah Gerlitz, who determined through warrants served on Google and Comcast that the email had been sent from an IP address registered to Plaintiff's residence. On August 4, 2016, KCSO detectives executed a search warrant on the Tighe residence, retrieved the laptop from which the email was sent, and Katherine Tighe confessed to creating the Google account and sending the email in question. *Id.*, p. 2, ¶ 5; Exhibits 2 and 3. Katherine Tighe pleaded guilty to disorderly conduct on October 3, 2017. *Id.*, p. 2, ¶ 5.

1    Plaintiff's alleges that KCSO took no action against his wife until a year later, after

2    Plaintiff joined in an internal complaint with a senior KCSO supervisor challenging the way

3    KCSO had conducted its investigation of Plaintiff. Plaintiff claims that only then did KCSO, in

4    retaliation, forward charges against his wife for misdemeanor prosecution. Dkt. 1-2, p. 9.

5    Thereafter, Plaintiff was found by independent medical personal to be "unfit for duty" allegedly

6    as a result of KCSO's actions, and was placed on family medical leave. *Id.*

7                                              **DISCUSSION**

8        A party may "obtain discovery regarding any nonprivileged matter that is relevant to any

9    party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

10   Whether discovery is proportional to the needs of the case hinges on "the importance of the

11   issues at stake in the action, the amount in controversy, the parties' relative access to relevant

12   information, the parties' resources, the importance of the discovery in resolving the issues, and

13   whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. The

14   court must limit the extent of discovery that is, *inter alia*, unreasonably cumulative or

15   duplicative, outside the permitted scope of Rule 26(b)(1), or obtainable from another source that

16   is more convenient, less burdensome, or less expensive. *See* Fed. R. Civ. P. 26(b)(2)(C); *see

17   also*, *Fox v. State Farm Ins. Co.*, No. C15-0535RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan.

18   26, 2016) ("The court must limit discovery that is not proportional to the needs of the case.").

19       On a showing of good cause, the court may issue a protective order pursuant to Federal

20   Rule of Civil Procedure 26(c). *See* Fed. R. Civ. P. 26(c). "The party opposing disclosure has the

21   burden of proving 'good cause,' which requires a showing that specific prejudice or harm will

22   result if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in

23   Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 3

Plaintiff has brought USERRA and WLAD discrimination claims, which require him to establish, *inter alia*, that his status or activity was protected; his employer took an adverse action against him; and that his status or activity was a motivating factor for the employer's adverse action. *See*, *e.g.*, *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 743 (2013). Plaintiff asserts that the information requested is relevant to proving Defendants' discriminatory motivation as it compares "Defendants' conduct in similar circumstances involving minor complaints against members of the KCSO, and the responses to those complaints, including whether they obtained a search warrant in similar or even more serious circumstances." Dkt. 36, p. 3. In Topic 8, Plaintiff requests that Defendants provide an individual with knowledge to testify about:

> (a) the number of allegations of domestic violence made against any KCSO deputy in the last five years and (b) whether the allegation of domestic violence resulted in (i) KCSO issuing any search warrant and (ii) recommending that the King County Prosecutor's Office press criminal charges against the KCSO deputy. In the event that there is information responsive to sub-part (b) of this topic then this topic further seeks an individual with knowledge of the domestic violence allegation that gave rise to the issuance of the search warrant and recommendation for prosecution.

Plaintiff argues that the information sought in Topic No. 8 "is certainly relevant and seeks good evidence of differential treatment that Mr. Tighe is entitled to examine. The request seeks the number of times a KCSO deputy has been accused of Domestic Violence, and the subsequent use of search warrants and recommendations of cha[r]ges." Dkt. 36 at 9.

As a general proposition, "comparator" evidence, or evidence that one was treated differently than similarly situated employees because one complained, is relevant and discoverable in a discrimination suit. *See*, *e.g.*, *Lauer v. Longevity Medical Clinic, PLLC.*, 2014 WL 5471983 (W.D. Wash. October 29, 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Chuang v. University of Cal. Davis*, 225

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 4

F.3d 1115, 1126 (9th Cir.2000). However, to be "similarly situated, employees must "be

similarly situated in all material respects." *Moran v. Selig*, 447 F. 3d 748, 755 (9th Cir. 2006);

*Vasquez v. County of Los Angeles*, 349 F. 3d 634, 643 (9th Cir. 2003) ("Individuals are similarly

situated when they have similar jobs and display similar conduct"); *Hollins v. Atlantic Co., Inc.*,

18 F.3d 652, 659 (6th Cir. 1999)(to be similarly situated, an employee must have the same

supervisor, be subject to the same standards, and have been engaged in the same conduct).

Plaintiff fails to show how he is similarly situated to the broad class of individuals

encompassed within Item No. 8. This item requests records relating to allegations of "domestic

violence" over a five year period. As noted by Defendants, this request includes approximately

800 deputies doing different jobs, for different supervisors, in King County, unincorporated King

County, and in a dozen different cities and transit systems (KCSO provides public safety services

to all of unincorporated King County as well as the contract entities of Carnation, Sammamish,

Skykomish, Woodinville, Beaux Arts Village, Covington, Maple Valle, Muckleshoot Tribe,

Newcastle, Burien, SeaTac, Kenmore, Shoreline, King County Int'l Airport, King County Metro

Transit, and Sound Transit). Dkt. 33, p. 9-10. Plaintiff also fails to explain how allegations of

"domestic violence" crimes under RCW 10.99.020 are in any way similar to the cyberstalking,

gross misdemeanor under RCW 9.61.260, which prompted the investigation at issue.

Plaintiff essentially acknowledges that the information sought in Item No. 8 is not true

"comparator" evidence, but would be used to show how KCSO responded to matters involving

its own deputies in "far more serious circumstances [such] as domestic violence" to compare "to

the extraordinary actions they took against Mr. Tighe." Dkt. 36 at 8. However, whether search

warrants were sought in factually dissimilar cases against persons not similarly situated to

Plaintiff is not probative of his discrimination claims. *See*, *e.g.*, *Breiterman v. United States*

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 5

*Capitol Police*, 324 F.R.D. 24 (D.D.C. 2018) (citing *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1116 (D.D.C. 2016) (Assertion by female officer in Title VII action that "many male officers" received less discipline than female officers was insufficient to establish relevance of dissimilar conduct; to be useful as comparator evidence, prior complaints must involve misconduct similar to, or of comparable seriousness as, the alleged misconduct.).

Defendants have also shown that it will be unduly burdensome to retrieve the information in Item No. 8. Dkt. 33, p.10-11; Dkt. 34, p. 2-5. Plaintiff provides no evidence to the contrary, except to state that "Defendants admitted in conference that they could obtain that information from the Sheriff's Office, but declined to do so." Dkt. 37, ¶ 7. Defendants' counsel disputes that it ever made such a representation. Dkt. 39, ¶ 4. Regardless of the parties' dispute, a Rule 30(b)(6) notice is subject to limitations under Rule 26 which requires the information sought not be unduly burdensome and disproportionate to the needs of the case. Here, Defendants have provided testimony about the difficulty of retrieving the information from their existing computer systems. KCSO has determined there are approximately 24,636 incident reports coded "domestic violence" between October 24, 2013 and the present. Each entry would need to be searched manually to determine if it involved any of the approximate 800 KCSO Deputies for the relevant time period. Alternatively, KCSO would need to run a person search on each of the 800 deputies' names for responsive information. Defendants estimate the process would take several hours per deputy and several thousands of hours overall. Dkt. 34, Groce Decl., pp. 2-3, ¶¶ 5-6. As there are no combination of fields which would allow the KCSO to search for domestic violence cases which were also referred for prosecution, this information would also have to be manually retrieved by reviewing each incident report and comparing it to records of the King County Prosecuting Attorney's Office. In addition, not all of the deputies who work for KCSO

1    live in the county and criminal complaints of domestic violence could be lodged in another

2    jurisdiction. *Id.*, Groce Decl., p. 4 at ¶12. KCSO also determined that there were approximately

3    2,189 entries in very general categories that might reasonably include all of the domestic

4    violence allegations made against all deputies, but each file would also have to be reviewed

5    individually to determine if it contained responsive information. *Id.*, Groce Decl., pp. 4-5, ¶¶ 9-

6    13.

7         The Court is also mindful that Defendants have already responded to written discovery

8    requests and produced a person with knowledge to testify on topics specifically aimed at flushing

9    out "comparator" evidence," such as employment discrimination complaints brought against

10   KCSO; citizen complaints of nuisance and harassing emails and KCSO's response to those

11   complaints; and number of search warrants obtained by KCSO in 2016 and 2017 in any

12   cyberstalking investigations. In addition to the written responses, three designees testified on

13   November 8, 2018 and Plaintiff was satisfied with these responses. Dkt. 39, Bond Decl., ¶ 3.

14        As it would be unduly burdensome and expensive for the County to undertake the manual

15   search necessary to obtain information in response to a request which seeks information that is

16   unlikely to be probative of Plaintiff's claims, the Court finds that Defendants' motion for

17   protective order as to Topic No. 8 should be granted.

18        Accordingly, it is **ORDERED**:

19        1.    Defendants' motion for protective order (Dkt. 33) is **GRANTED**; Plaintiff is

20   prevented from taking further deposition under Fed. R. Civ. P. 30(b)(6) of Defendants on Topic

21   No. 8.

22   \\

23   \\

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 7

2.      The Clerk shall send a copy of this Order to the parties.

DATED this 19th day of November, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER GRANTING DEFENDANTS'
MOTION FOR PROTECTIVE ORDER - 8